Williams, Judge,
delivered the opinion:
The plaintiff, Elias R. Beadle, was from June 10, 1927, to March 31, 1929, the period covered by this suit, a duly commissioned officer in the United States Marine Corps with the rank of a lieutenant colonel, having no dependents, and brings this suit to recover rental allowance which he alleges is due him by reason of the character of his service *312 as an officer of the of the Guardia Nacional (National Guard) of the Republic of Nicaragua.
The act of Congress, section 6, approved June 10, 1922 (42 Stat. 628), as amended and reenacted by the act of May 31,1924 (43 Stat. 250-251), provides as follows:
“ Except as otherwise provided in the fourth paragraph of this section, each commissioned officer below the grade of brigadier general or its equivalent, in any of the services mentioned in the title of this act, while either on active duty or entitled to active-duty pay shall be entitled at all times to a money allowance for rental of quarters.”
The act of June 10, 1922, as amended by the act of May 31, 1924, paragraph 4, provides:
“ No rental allowance shall accrue to an officer, having no dependents, while he is on field or sea duty, nor while an officer with or without dependents is assigned as quarters at his permanent station the number of rooms provided by law for an officer of his rank or a less number of rooms in any particular case wherein, in the judgment of competent superior authority of the service concerned, a less number of rooms would be adequate for the occupancy of the officer and his dependents.”
The amendatory act of May 31,1924, contains the further provision:
“ Regulations in execution of the provisions of this section in peace and in war shall be made by the President and shall, whenever practicable in his judgment, be uniform for all the services concerned, including adjunct forces thereof.”
Pursuant to the authority vested in the President in the foregoing provision, the President issued an Executive order (No. 4063) on August 13, 1924, wherein the term “ field duty,” as used in the act, was defined as follows:
“ The term ‘ field duty ’ shall be construed to mean service, under orders, with troops operating against an enemy, actual or potential.”
The act of March 2,1901, 31 Stat. c. 803, p. 901, provides :
“The Secretary of War may determine what shall constitute ‘ travel and duty without troops ’ within the meaning of the laws governing the payment of mileage and commutation of quarters to officers of the Army.”
*313 The act of May 19,1926 (44 Stat. 565), authorized the employment of officers and enlisted men of the Army, Navy, and Marine Corps, upon application from foreign governments concerned, to assist the Governments of the Republics of North America, Central America, and the Republics of Cuba, Haiti, and San Domingo in military and naval matters. This act carried the following provision:
“ That while so detailed such officers and enlisted men shall receive, in addition to the compensation and emoluments allowed them by such governments, the pay and allowances whereto entitled in the United States Army, Navy, and Marine Corps, and shall be allowed the same credit for longevity, retirement, and for all other purposes that they would receive if they were serving with the forces of the United States.”
The plaintiff during the period from June 10, 1927, to March 31, 1929, was detailed by proper authority to the Republic of Nicaragua, and served as commanding general of the National Guard of Nicaragua, with headquarters at Managua. No public quarters were available for him and he rented quarters for his own use and paid the rent therefor out of his own funds. He is entitled to recover the rental allowances provided in section 6 of the act of June 10, 1922, unless he was on “ field duty ” during the period of the detail within the meaning of paragraph 4 of the act of May 31, 1924.
The test as to whether the plaintiff was on “ field duty ” during his service in Nicaragua is whether or not he was serving “under orders, with troops operating against an enemy, actual or potential.”
General Order No. 43, promulgated by the Secretary of War, through The Adjutant General of the United States on April 1, 1901, pursuant to the provisions of the act of March 2, 1901, defined the term “without troops”:
“ Officers on duty in the War Department, at Army and other general headquarters, attending surgeons and other officers on duty in cities and other places where public quarters are not furnished, but where enlisted men are on duty only as guards, orderlies, clerks, and messengers and recruiting officers at city stations are regarded as being on duty without troops within the meaning of the laws and regulations.”
*314 The term “ operation ” when used in a military sense is defined in Wilhelm’s Military- Dictionary a/nd Gazeteer:
“ * * * resolute application of preconcerted measures in secrecy, dispatch, regular movements, occasional encampments, and desultory combats or pitched battles.”
Applying these accepted definitions to the facts in this case, it can not be held that the plaintiff’s service in Nicaragua was “with troops operating against an enemy, actual or potential.”
The National Guard of Nicaragua is declared in the act creating it to be “ an institution foreign to all political influences designed to maintain social order in the triple capacity of an urban, rural, and judicial police force.” The national guard was, during the period in which the plaintiff was its commanding officer, essentially a police organization, the purpose and function of which was to preserve law and order in the Republic. The duties of the plaintiff were administrative in character. He was during the whole period of his service stationed at headquarters in the city of Managua. The only enlisted men or troops of any character attached to his headquarters were orderlies, clerks, and guards. He at no time during the period of his detail engaged in combat, and it is not shown that he at any time operated with any organized forces of the guard in expeditions against bandits and outlaws which then infested parts of the Republic of Nicaragua. His work consisted wholly in instructing and training the personnel of the Nicaraguan National Guard, to the end that it should become an effective and disciplined police force in the maintenance of social order and domestic peace.
The plaintiff, therefore, was not on field duty, and the exception in paragraph 4 of the act of May 31, 1924, 'is not applicable to his case. He is entitled to receive the rental allowance provided in section 6 of the act of June 10, 1922, for officers assigned to active duty.
Judgment will be entered in favor of the plaintiff for the sum of $1,704.00. It is so ordered.
Whalet, Judge; LittletoN, Judge; GREEN, Judge; and' Booth, Ohief Justice, concur.